Eastern District of Kentucky
F I L E D
APR 2 7 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-286-GWU

RACHEL H. CAUDILL,                                            PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT,

## INTRODUCTION

Rachel Caudill brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Caudill, a 30 year-old woman with a "limited" education and no past relevant work history, suffered from impairments related to borderline to mild mental retardation and tobacco abuse. (Tr. 17-18, 22). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 22). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 22). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Maureen Sinclair included such non-exertional limitations as a restriction to (1) low stress, entry level work with simple one-two step procedures; (2) no frequent changes in

5

work routines; (3) no requirement for literacy or arithmetic skills; (4) no requirement for problem-solving or independent planning; (5) a "limited" ability to interact with the general public, co-workers, or supervisors; and (6) no rigid production schedules. (Tr. 218). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 218). Therefore, assuming that the vocational factors considered by Sinclair fairly depicted Caudill's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ properly found that Caudill did not suffer from any physical restrictions. Dr. Jacob Agamasu, an examining consultant, found "no physical impairment in performing such activities as sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling." (Tr. 112). The plaintiff's treating source at Mountain Comprehensive Health Corporation did not identify the existence of any physical restrictions. (Tr. 138-178). "A lack of physical restrictions constitutes substantial evidence for a finding of non-disability." Maher v. Secretary of Health and Human Services, 898 F.2d 1106, 1109 (6th Cir. 1989). Dr. John Rawlings, a non-examining medical consultant, opined that the claimant's physical limitations were "less than severe." (Tr. 137). Therefore, the ALJ dealt properly with this portion of the administrative decision.

The hypothetical question also fairly characterized Caudill's mental status. The mental limitations were essentially consistent with those identified by Psychologist Robert Fitz, an examining source, who noted (1) a "fair" ability to relate to others including fellow workers and supervisors; (2) a "fair to poor" ability to understand, retain and follow instructions and to tolerate the stress and work pressures of day-to-day work; (3) "limited" communication skills and ability to solve problems; and (4) a need for close supervision; and (5) a problem

making good decisions when routine was changed. (Tr.89). The question was also compatible with the mental limitations identified by Psychologist Lea Perritt, a non-examining medical reviewer. (Tr. 90-91). The question was also arguably consistent with the somewhat differently worded mental limitations indicated by Psychologist Jane Brake. (Tr. 116-117). Therefore, substantial evidence supports the administrative decision.

Caudill argues that the ALJ erred in concluding that she did not meet the requirements of Section 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05(C). The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental stage. [before age 22]." 20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05. Thus, to satisfy the requirements of Section 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

Caudill has established a valid IQ score within range to meet the Listing. IQ testing administered by Fitz revealed a verbal IQ score of 69. (Tr. 87). The examiner opined that she appeared to give an honest effort on the test and it was found to be an accurate indication of her current functioning. (Tr. 87). The examiner went on to diagnose mild mental retardation. (Tr. 88). Both reviewers indicated that a valid IQ score within Listing range had been established. (Tr. 96, 125). Therefore, this requirement was met.

7

Nonetheless, Caudill has not established the existence of another mental or physical impairment which imposes additional and significant work-related restrictions upon her. Fitz only diagnosed mild mental retardation. (Tr. 88). Thus, all of his limitations clearly related to this condition. As previously noted in this opinion, the Court found that the ALJ properly determined that the plaintiff did not suffer from any physical restrictions. The claimant asserts the ALJ's determination that tobacco abuse was a "severe" impairment warrants a finding that the Listing was met. However, since the ALJ clearly found no additional physical restrictions, it would appear that this was a gratuitous finding. Furthermore, the Sixth Court of Appeals has stated in relation to a claim for disability benefits involving cigarette smoking that:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege--but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

<u>Sias v. Secretary of Health and Human Services</u>, 861 F.2d 475, 480 (6th Cir. 1988). Therefore, the ALJ's finding concerning Caudill's tobacco abuse cannot be the basis of an award of SSI.

Finally, Caudill asserts that the ALJ erred by failing to properly consider the combined effect of her impairments. However, the undersigned has concluded that mild mental retardation was her only significant impairment. Thus, there were no other impairments to consider in combination. Therefore, the Court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be

entered simultaneously consistent with this opinion.

This the __27__ day of April, 2005.

                                              G. WIX UNTHANK
                                              SENIOR JUDGE